FARNUM ABBOTT, 2d. *vs.* PHINEHAS WOOD.

A privilege reserved in a dwellinghouse to a person, for a limited time and for a special purpose, does not constitute him a tenant in common of the estate.

Where a lessee for years assigns his lease to the proprietor of the fee, " reserving the privilege, if H. moved into the house to have a man board with him to feed out the hay in the barn, or if H. should not move in, reserving the right of having a man cook and board in the house, and also reserving the right to remove his property from the house ;" such reservation does not make the lessee a tenant in common of the estate.

Where a person has lawful authority to enter the dwellinghouse of another for one purpose ; if he enter forcibly for a different one, for which he has no authority, he thereby becomes a trespasser.

THIS was an action of trespass *quare clausum*, and came before the Court on a statement of facts. The general issue was pleaded

and a brief statement filed in which the plaintiff alleged, that at the time of the act complained of he was tenant in common in the premises with the plaintiff

The plaintiff had an undisputed title to one undivided half of the premises from *Enos Abbott*, by deed dated *May* 4, 1827. The title to the other half stands thus. On the 4th of *May*, 1827, *Enos Abbott* conveyed the other half to one *Farrington*, who on the 6th of *November*, 1830, conveyed the same by quit-claim deed to the said *Enos Abbott* and his wife; and on the same day, *Enos Abbott* and wife by deed of warranty conveyed that half to the plaintiff.

In *September*, 1829, *Enos Abbott* leased one undivided half of the premises to *Wood*, the defendant, for the term of six years, of which the plaintiff had knowledge. The defendant entered under his lease and made a parol division with the plaintiff, and occupied under it until the autumn of 1833, when he leased his right to one *Hodgman*, " reserving the privilege, if *Hodgman* moved into the house, of having a man board with him to feed out the hay in the barn, belonging to *Wood*, to his cattle; or if *Hodgman* should not move in, reserving the right of having a man cook and board at the house ; and also reserving the right to remove his property from the house." In *February*, 1834, *Hogman* " underlet" that half of the house to the plaintiff, who entered into the possession of that, as well as the other part of the house. At this time the plaintiff was not informed of the reservation made in favor of *Wood*, but had knowledge of it a short time before the act complained of was committed.

In *March*, 1834, *Wood* broke and entered the house, as alleged in the writ. The house was then closed, and the plaintiff forbid *Wood's* entry, stating that if *Wood* had any thing in the house it should be handed out to him. The breaking and entering by the defendant was at the front door; and he was accompanied by an officer to whom he had delivered an execution in his favour against the plaintiff, and who although requested by *Wood* to break and enter, refused; and therefore *Wood* broke open the door, and was followed in by the officer. At this time *Wood* had some grain in a chamber of the house, and when he

demanded an entry said it was for the purpose of obtaining the grain.

*D. Goodenow* and *P. C. Virgin,* for the plaintiff, said, the only question was, whether the brief statement was supported by the facts agreed in the case ? and contended :

1. That the plaintiff was in quiet and peaceable possession of the house, and that even, if the defendant had a legal right to the possession by superiour title, still he had no right to enter by violence.

2. The right reserved by *Wood* did not make him a tenant in common with the plaintiff. At most it was a mere privilege in the house, for the interruption of which a personal action might possibly lie. It was not real estate for which a writ of entry, or trespass *quare clausum* will lie, nor is it subject to partition. *Taylor* v. *Townsend,* 8 *Mass. R.* 417; *Lord* v. *Lord,* 3 *Fairf.* 88; *Chandler* v. *Thurston,* 10 *Pick.* 207 ; *Inhabitants of Worcester* v. *Green,* 2 *Pick.* 425 ; *Chetham* v. *Williamson,* 4 *East,* 469.

*Wood's* reservation was only by parol, and could not possibly give more, than a tenancy at will, and this was determined either by the plaintiff's entry under his assignment, or by his forbidding *Wood* from entering.

3. Here was a permanent injury to the building, of which the plaintiff was sole and entire owner, for which this action will lie. *Starr* v. *Jackson,* 11 *Mass. R.* 519.

4. *Wood's* object was not to enter for any purpose reserved, when he assigned to *Hodgman,* but for a different one, which that reservation does not reach and cannot justify. *Chandler* v. *Thurston,* 10 *Pick.* 210.

*S. Emery,* with whom was *Rawson,* said, that the general question upon the facts agreed is, whether the action can be supported.

1. As the legal title was in *Farrington* at the time the lease was given to *Wood,* perhaps nothing passed to him then ; but the subsequent conveyance of *Farrington* to the lessor of the defendant enured to his use and perfected his title for the residue of his term, upon the settled principle, that if a man sell lands to which he has no title, and afterwards purchase of the owner, such pur-

chase will enure to the use of his grantee. *Adams* v. *Frothingham,* 3 *Mass. R.* 356 ; *Porter* v. *Hill,* 9 *Mass. R.* 34.

2. *Wood's* interest under the lease remained unaffected by the deed from *Enos Abbott* to the plaintiff of that moiety. *Wood* had long before entered under his lease ; the defendant had knowledge of it, and made a parol partition with him. The plaintiff therefore could hold nothing more, than the remainder, after the determination of the defendant's term. *Trull* v. *Bigelow,* 16 *Mass. R.* 406.

3. As there is nothing to impair the validity of the lease, the inquiry is, what rights *Wood* retained, when he underlet to *Hodgman*? The reservation made, left *Wood* in the full possession of the property leased, to the full extent of these reservations. *Hodgman* could convey to the plaintiff no more, than he owned. Whether he did or did not know what these reservations were is immaterial. By denying to the defendant his legal right of entering the house and attempting to keep him out, the plaintiff, not the defendant, became the trespasser.

4. Nor is the act of the plaintiff to be deemed an ouster of the defendant requiring a resort to his action for possession. He cannot become disseisor by election ; that right belongs to the defendant, and he has elected to consider the plaintiff a mere trespasser.

5. If the acts of the plaintiff amounted to an ouster, the defendant was not a trespasser by his entry. The law is settled, that if a person, who has right, make a forcible entry, the wrongdoer upon whom he entered with force cannot maintain an action of trespass for such entry. *Stearns on Real Actions,* 22 ; *Hyatt* v. *Wood,* 4 *Johns. R.* 150 ; *Stuyvesant* v. *Tompkins,* 9 *Johns. R.* 61.

6. The plaintiff's offer to hand out articles belonging to the defendant is an immaterial circumstance. It could not take away the plaintiff's right to enter and examine and take his property. He had a right to take with him any assistant he liked best, and if such assistant should do any illegal act, the remedy by action was open to the plaintiff.

7. If it were true, that the right of *Wood* was a mere tenancy at will, still the law would allow him a reasonable time after

notice to enter and remove his property. *Ellis* v. *Paige*, 1 *Pick.* 49.

The action was continued for advisement, and the opinion of the Court, at a succeeding term, was delivered by

Weston C. J. — We are of opinion, that the right of ingress and egress, for the removal of his property in the house, reserved in the lease made by the defendant to *Hodgman*, and the reservation of the right to have a man cook and board in the house, to feed out the hay in the barn belonging to the defendant to his cattle, did not constitute the defendant a tenant in common in the estate. It was a privilege reserved for a temporary purpose. If it might be exercised even forcibly, against the will of *Hodgman*, or those claiming under him, by the defendant without being charged as a trespasser, it gave him no interest in common in the estate. It was not in its nature tangible or capable of partition. Whether it had the character of an easement, or by what remedies it might be enforced, it is not now necessary to decide. It does not support the brief statement, in which the defendant avers, that he is tenant in common with the plaintiff.

Had the defendant entered the house, even with force if necessary, for the purpose of removing his grain, we are not prepared to say, that trespass could have been maintained against him. That right he had reserved to himself, when it belonged to him to prescribe, on what conditions he would part with his interest. But it is very manifest that his object was to put the officer, having an execution in his favor against the plaintiff, into the house; and there is reason to believe, that the removal of the grain at that time, was to give color of right to the transaction. He claimed access for the officer, and called upon him to break the door; and when he declined, the defendant forced an entrance for him. The plaintiff had before offered to deliver to the defendant any articles of his own, he might desire to remove from the house. It appears to us, that the defendant has made out no justification for the act, with which he is charged, but that an entry was forced through the outer door of the plaintiff's house without right, and against law, to enable the officer to serve therein civil process.

*Defendant defaulted.*